May it please the court, my name is Cody Kofor, I represent appellant Buck James Brune. Because the district court violated the bar against double jeopardy, the court should reform the judgment of conviction and remand the case for a new sentencing hearing. The only question is whether jeopardy attaches when a district court unconditionally accepts a guilty plea and a judge is a defendant guilty. Does all of this boil down to whether our Sanchez opinion was overruled by the Supreme Court in Johnson? Is that the essential question of law? No your honor, because even if Sanchez was overruled, and I believe Johnson limits Sanchez or gives some exceptions to Sanchez, that still leaves us with no rule following Johnson. And so there has to be at some point that jeopardy attaches and presently the rule is in Sanchez, we don't have anything to fill in that void. But all of the interest at play in this case can be addressed with really three questions. One, whether the government had a fair opportunity to prosecute all of the charges, whether the district court had a fair opportunity to consider all of the charges, and third, whether Mr. Brune relinquished control of the outcome in the case. In each instance, the answer is yes. Are you really wanting us to focus on fairness? I thought your argument is, you know, we need to be really strict. Because in fairness, didn't your client mean to plead guilty to the B? So it's not a fairness argument. You're not asking us to fairly do something. You're asking us to strictly construe something. Because if we were just saying, what did the parties intend, you would lose, right? Yes, I agree. I would lose if the question was only, what did the parties intend at the Rule 11 colloquy? But I do believe that those questions of whether the government had the opportunity to prosecute, the court had the opportunity to address all charges. When is the moment that you believe that the court can't take it back? Whenever the court finds the defendant guilty. In this instance, record on appeal at 50, whenever the court enters the order of judging Mr. Brune guilty. What if there's a motion to reconsider, or a dismissal, and a motion to reconsider a dismissal? Well, if it were filed by the defendant, then I think Double Jeopardy would dissolve. But if it were filed by the government, then Double Jeopardy would protect Mr. Brune from prosecution after the dismissal. So once an interlocutory order is filed regarding the plea, you believe nothing else, nothing can change that. That's the moment, is that correct? Yes, Your Honor. I believe there are some events that can happen before that could make that order not attach Jeopardy. For instance, if there was an extraordinary defect in the charging instrument that didn't give the court jurisdiction, or if we were put in this situation by the actions of the defendant, like in Johnson, where the defendant was actively seeking a situation to attach Jeopardy to escape prosecution and other charges. But the defendant lost in Johnson. That's right, Your Honor. Oh, okay. And so I think Johnson is a good example, and very different from our situation, because in Johnson, the defendant- You know what? Did you represent this fellow at trial? Yes, Your Honor. Well, then you're well aware that he was the leader of this ring. He was the principal defendant sought by the government. He had been, at the height of the conspiracy, he was distributing a half pound of meth per day to one of the purchasers, which is a huge amount of money, if you add that up. There is no way, it seems to me, that a skilled lawyer like yourself did not tell this fellow that he was looking at up to 40 years imprisonment. And in fact, you agreed with that. That's right, Your Honor. So what I would like to know is, we don't have to reach double Jeopardy if a rule of criminal procedure applies here. And I believe it's argued that Rule 36 allows the court to fix clerical errors. And why isn't that essentially what happened here? This is not a clerical error. Perhaps, or certainly, whenever the statute was originally incorporated in the charging instrument by the government's drafting, that was an error. But whenever the report and recommendation of the magistrate recommends Mr. Broom be convicted of 841B1C, it takes on a new meaning. And then certainly, whenever the district court adopts the report, incorporates 841B1C. Why isn't it still just a clerical error all the way through? What gives it some new meaning, as you say? From June 13th to December 17th, the date that the order accepting the recommendation until the date of sentencing, Mr. Broom was convicted of 841B1C. And for 187 days, he was in Jeopardy of a sentence of 20 years. And if the case would have gone on, he could have received the 20-year sentence. So certainly, he was placed in Jeopardy for that time. Also, Mr. Broom was not in a position to be able to withdraw his plea. He did not object during the 14 days. And he was bound by his plea. Certainly, the government should be bound by their actions. You know, the government is looking for flexibility, where we can fix problems. But the system already provides for that. And the government didn't avail itself of that flexibility. The government had 14 days where they could have fixed what they perceived as the wrong report and recommendation. Is that what Rule 36 requires, 14 days or what? No, that's Rule 59. Rule 36, so that's Rule 59 for objecting to the magistrate's report and recommendation. Right. And so suppose the error had been instead of an adjacent subsection, that by accident, the judgment reflected some completely unrelated criminal statute. Let's say an environmental criminal violation or a criminal violation of the Internal Revenue Code, something completely unrelated, an obvious mistake. You would say that that would not qualify as a clerical error because in the interim number of days, the person stood convicted of that completely unrelated statute. I would agree that that would not be a clerical error. It may be an error, but it would certainly be of substance and significant. Now, in that circumstance, of course, there would not be a charging instrument to support. And so that would be an exception to the double jeopardy attaching whenever the charging instrument doesn't vest the district court with jurisdiction. But in this instance, the charging instrument had the two charges in it. It had the lesser charge and then it had the additional 50 grams added on. And so the district court was in a position to consider both charges. I understand it was not the intention of the government to do that. And candidly, as on the record in the district court and in my brief, it was not the intention of Mr. Broon to enter a plea to the lesser charge. But the court had jurisdiction to make that decision. And Mr. Broon didn't create this situation. And most double jeopardy jurisprudence stems from a mistake, a mistake that either the government or the district court has made. And going back to Feng Fu all the way up to recently in Evans, the case relied on in the reply brief, Santa Maria was a mistake where the district court made an egregious error in misunderstanding the charging instrument. And so there has to be some line when jeopardy attaches. Question is, what would be wrong, for instance, with the line being when judgment and sentence is entered? And there's a case in the government's brief and cited in the reply brief, Patterson, out of the Ninth Circuit, that gives a great example. In that case, the government filed a charging instrument and neglected to put in a quantity of marijuana. And then Apprendi comes down after the defendant has entered a plea of guilty, but before sentencing. And so the government realizes they're not going to be able to get the sentence they'd hoped for. And they move to dismiss. The district court allows them to. And it's reversed for a violation of double jeopardy. Because the defendant is entitled to the finality once he is adjudged guilty, that he knows that he is guilty from then on, and he's bound. In this case, if the court were to reverse on the other issue, for instance, send the case back for sentencing. And if the rule were that jeopardy doesn't attach until judgment and sentence is entered, then the government could, once it's remanded, dismiss this case and file a new case, perhaps attend a life count. And in this instance, we have something like 202 days between Mr. Broon's plea and when he's finally sentenced. Poor guy. 202 days incarcerated of a minimum 20-year sentence. Well, 202 days for the government to, if they, for whatever reason, decided they didn't like the charge, they could have indicted him and tried him anywhere from two to six times in that amount of time from the time he entered his plea. I know it wasn't your obligation, but dare I ask, when you observed that there was a clerical error in the judgment? I don't believe the record bears out when Mr. Broon first saw the clerical error. I just wondered. Since you have a few more minutes left, I'd like to ask you about this Michoacan enhancement. What's wrong with that enhancement? One of his co-conspirators said it was a member of the Michoacan cartel. Even three judges sitting on the bench here have enough experience with prosecutions out of Dallas to know that all the meth in Dallas was coming in huge quantities from processing plants in Michoacan, and then the government has some kind of highly redacted report that they cite, too. But I mean, how can we deny the obvious for that two-point enhancement? Because the evidence, the report, what made its way into the pre-sentence report is that the cartel's activities were based in Dallas, and there's no evidence anywhere that the methamphetamine was manufactured in Mexico. It was a member of the Michoacan cartel, right? That's what the co-conspirator said. That's right, Your Honor. I don't know of a Michoacan Dallas. I mean, even if their tentacles go elsewhere, what's the likelihood that a member of the Michoacan cartel is not importing methamphetamine from Mexico? I don't believe the record answers that question. Well, I think that's denying the obvious, but I guess we'll let the government try to answer that. How much, I didn't see this in your brief, how much would the two-point enhancement have affected the sentence? Your Honor, I apologize. I don't know off the top of my head how his guidelines would have, or what the recommended sentencing range. He ultimately received a variant sentence, and so I apologize, I don't know. That's okay. Well, is there a chance that it doesn't make a difference? Because we have cases where we say, you know, even the case that's relied upon is a case where it ultimately didn't make a difference. Well, in this instance where the district court assessed a downward variance, presumably the district court would have started at the bottom of the guidelines, and so we're not dealing with guidelines that are beyond the statutory maximum. Now, of course, if successful on the double jeopardy issue, then it really doesn't seem to probably make a difference. And so the rule that jeopardy attaches when the district court accepts the plea and adjudicates to defendant guilty, it's simple, it's clear, and it's supported by the cases. And there is no rule presented by the government to replace the Sanchez rule. And double jeopardy, the whole hallmark is finality, certainty, and that there's a line. And that is why we ask that the court reform the judgment of conviction and remand the case for a new sentencing year. All right. Thank you, Mr. Kofer. You've reserved time for rebuttal. Thank you. Ms. Ricketts. Good morning, Your Honor. May it please the Court, Rebecca Ricketts for the United States. So opposing counsel presents an attractive argument, which is that a bright-line rule is helpful to all of us. Why wouldn't a bright-line rule be beneficial? A bright-line rule with respect to when jeopardy attaches, Your Honor? Yes. The basic problem with that is that the Supreme Court has rejected that bright-line rule in Ohio v. Johnson. So I would agree with Your Honor's question earlier that if this Court were to reach the double jeopardy clause analysis, the basic question is whether Johnson overruled Sanchez. And the facts and the holding of Johnson made clear that it did, as the — as all but one circuit courts that have examined that issue in any detail have concluded. I mean, in a sense, the whole statement in Sanchez was dicta because the Court ultimately holds that the trial court never accepted a guilty plea at all, so that you didn't even have a jeopardy problem. That's correct, Your Honor. So, I mean, I would have called that dicta, but — I would as well, Your Honor. The defendant's basic argument in this case is that he should reap a windfall from a typographical error in a citation in the charging instrument. And as Judge Eldrod has already pointed out, the defendant's own factual resume, waiver of indictment, and sworn testimony all repeatedly refer to the 5 to 40 penalty range set forth in Section B1b. Those facts are fatal to the defendant's double jeopardy claim for at least three reasons. The first is that the defendant has no reasonable interest in the finality of a plea that is based on a typographical error. The defendant repeatedly states, both here today and throughout his briefs, that he was, quote, convicted when the district court accepted the report and recommendation of the magistrate judge, and that's simply not true. Under Rule 32, judgment is not entered until the court completes the sentencing process. Rule 32 actually requires that the judgment of conviction set forth the plea and the sentence. And so the Supreme Court has therefore held that a court must impose sentence before a judgment of conviction can issue. That's the Mitchell v. United States case, 526 U.S. 314. So the notion that the defendant was finally convicted and then the district court set aside or revoked that conviction when it corrected the typographical error is simply inaccurate. Instead, what we have here is an erroneous citation, a typographical error in the charging instrument that is at odds with the language of the information. I certainly hope someone in the government was reprimanded for that mistake. Yeah. It is a serious mistake, Your Honor, and the government takes it very seriously. Yeah. When was it noticed by the government? Do we know that? I don't believe the record speaks to that issue, Your Honor. I know that the government first brought the issue to the attention of the court in objections to the pre-sentence report, so it's my understanding that that's the moment at which the government became aware. It lasted for a while because it was in the recommendation. I mean, that's, you know. Okay. That's absolutely true, Your Honor. The citation, however, is at odds with the language of the information, and we know from this Court's precedents and from Rule 7 that it is the language of the information that controls. And then the factual resume signed by the defendant, agreed to by him and by his counsel in court, his waiver of indictment and his sworn testimony all point to the 5 to 40 penalty range. So there's simply no reasonable interest that the defendant has in the finality of a plea that's based on a typographical error. That's the first reason. The second reason the defendant's argument fails is that there is no governmental overreach here of the type that the double jeopardy clause is designed to prevent. The Supreme Court held in Ohio v. Johnson that there was no double jeopardy problem with continued prosecution on the remaining charges in a single indictment. This case is even easier because there is only a single charge and only one prosecution and one charge. So this is not a case involving successive prosecutions or multiple punishments. This is a case about the government's efforts to complete its prosecution on a single charge. And there's simply no governmental overreach involved on that background. What about the hypo presented by opposing counsel about if it was remanded that the government could try to go back and have a cake and eat it, too, and the idea to bring up new charges to start over? Your Honor, I think the remedy the defendant seeks here refutes, in essence, that hypothetical. All that the defendant has asked this Court to do is to remand for a new sentence and reform the judgment. At no point has the defendant said, either to the district court or to this court, that he wants to withdraw his plea. And I think that's telling, because the defendant knows, because all parties understood below, that the defendant was pleading to a charge with a penalty range set forth in B-1B. So under Johnson, I think the rule is clear that ending this prosecution now would deny the government its right to one full and fair opportunity to convict those who have violated its laws. Both principles set forth in Johnson, both the finality principle and the governmental overreach interest, cut in favor of the government. But the third reason, Your Honor, that the defendant's double jeopardy argument fails is that he is, in effect, attempting to wield the double jeopardy clause as a sword to prevent the government from completing its prosecution in this case. According to the defendant's argument, because that typographical error was not identified and corrected until after the district court accepted his guilty plea, the district court was simply powerless to do anything about it. Effectively, he's seeking to hold both the government and the district court hostage based on a typographical error. And that is exactly the type of weaponization of the double jeopardy clause that Johnson forbids. Now, the defendant attempts to distinguish Johnson in his reply, says that Johnson is a use of the double jeopardy clause as a sword. He's just using it as a shield because he was convicted. Now he's taken up the shield of his conviction. But that's, again, based on the faulty premise that the acceptance of the guilty plea was a, quote, conviction. And we know from Rule 32 that's not true. Sotomayor, how do we apply Rule 36 here? Your Honor, I think this is a clear case for the application of both. Well, if that's so, why is the government arguing the broader – I mean, I understand the need to respond to the defendant's argument, but the principle of constitutional avoidance is that we rule on the narrower than unconstitutional ground. That's a very fair observation, Your Honor. And I do think that this Court can resolve the case based on the application of Rule 36, which plainly gives the district court the authority to correct a clerical error at any time. The district court, in addition, had its own inherent authority to reconsider its own orders until they become final. The notion that the moment the order accepting the report and recommendation was entered, the district court was bound finally, and that that constituted the conviction, is both at odds with Rule 36. It's also at odds with Rule 11 because Rule 11 affirmatively requires that the district court to ensure that there's a factual basis for the plea prior to entering judgment. So we know from multiple sources within the Federal Rules of Criminal Procedure that the district court retains authority over the order until the judgment of conviction is ultimately entered. The district court, when it became aware of this issue at sentencing, conducted a detailed review of all of the relevant points in the record, had a lengthy colloquy with counsel, confirmed that the defendant was properly admonished on the B-1B penalty, and then ultimately imposed a sentence in accordance with that penalty range. Is it the government's position that the government could move to correct as long as it was within the time period following the final judgment, or could the government have — is there a time — is that the time where it would expire, the government's rights? Could the government have noticed it five years later or on appeal to us or, I mean, tried to — when does it finalize for the government's purposes? Your Honor, once judgment is entered — The time period following the entry of the judgment by which judgments can be corrected. Correct, Your Honor, exactly. And so the cases that the defendant cites about limitations on Rule 36 following the entry of judgment, that's absolutely true. The district court's authority once — once judgment is actually entered is much more curtailed, but those are simply not the facts that we have here. So if he would have appealed the cartel issue and you could not have cross-appealed for the first time, oh, by the way, this is the wrong thing and he's not supposed to be — should have been a B all along. No, Your Honor, I don't think so. Yet another reason why this Court should reject the rule the defendant has put forward is the extraordinarily perverse incentives that it would create both for defendants and for the defense bar. If this Court were to embrace the defendant's rule, effectively a defendant could identify a typographical error in a charging document, lie in wait until the district court has accepted the guilty plea, and then according to the defendant, the district court would simply be powerless to correct the error and the defendant would reap a wholly unintended windfall as a result. There's simply no authority for that, either in the Supreme Court's or this Court's double jeopardy precedence. Why is that a — why is that a concern that the Court should be worried about? You know, why isn't the defendant entitled to reap a windfall if the government fails to be vigilant? Because, Your Honor, the Supreme Court has specifically instructed that defendants are not to weaponize the double jeopardy clause in that way. That's simply not the interest that the double jeopardy clause is designed to protect. Instead, Johnson tells this Court to evaluate the double jeopardy analysis based on the defendant's interest in the finality of the plea and in preventing any governmental overreach. You're not saying, though, that they had a duty to bring it to the Court's attention? That's no ethical or — they can sit quietly, can't they? I suppose the only duty, Your Honor, is that of candor to the Court to — that all attorneys have to timely raise issues. But you're right that there's no affirmative rule that would require it. Unless the Court has further questions on the double jeopardy clause issue, I would turn to the — briefly to the importation enhancement. What do you do with the Nimrov case? Yes, Your Honor. I do think this case is distinguishable from Nimrov. Only on a couple of relatively narrow facts, but I think it's enough for the district court's factual findings to survive in this case. In Nimrov, the only evidence supporting the importation enhancement was an unspecified cartel that dealt in kilogram quantities. And this Court said, no, that's not enough. Mere reference to an unspecified cartel says nothing about where that cartel's activities took place. In this case, the PSR addendum correctly identified that the defendant's source of supply is a member of the Michoacan cartel who was based in Dallas. And the government then supplied 16 pages of proffer reports, including reports of the co-defendant who had identified the source of supply. That was Ms. Tonnes? Was that co-operator — was that co-conspirator Tonnes, T-A-N-I-S? Yes, Your Honor. I believe there are references — There's more than one who identified the Michoacan, right? That's my understanding, Your Honor. I believe that co-defendant Smith — that there are aspects of that proffer that also dealt with the source of supply. But to the extent that we don't accept the idea that common sense would say it must be supplied from Mexico, that — but that you actually have to say it was imported from — imported, then there's nothing in the record that says that, correct? That the drug was manufactured somewhere else and imported. I mean, in fact, theoretically, the cartel could have operations in multiple places and could manufacture drugs in multiple places, correct? So you could get non-imported drugs even from a cartel that has operations in a foreign country. Your Honor is correct that there is no explicit statement in the proffer report about where the methamphetamine was manufactured. However, the fact that the cartel is identified and that the location of the cartel's activities are identified — But the location of the cartel's activities that are identified is Dallas. That's correct, Your Honor. Dallas, Texas, which there's no articulation that the cartel has activities. I mean, you might be saying we can take judicial notice that because of the name of the cartel and because of our knowledge of cartel activities, but that seems to be what you're asking us to do. I do think that it is fair for this Court to — as the district court did, to understand these references in the context of its general knowledge about Mexican cartel activity. The defendant's argument basically — thousands of pounds of meth every day, practically, most of which comes into the United States. And we've learned that from other cases that have come from the Dallas area and huge money-laundering prosecutions. And the fact that there were members of the, quote, or co-conspirators with the, quote, Michoacan cartel in Dallas just means that they had to — had to oversee the operations that were generating zillions of dollars. I mean, you know, what this amounts to, in my view, is not a question of clear error, but a question of are we going to require the PSR to state every little tiny detail, assuming that there is a veil of ignorance, an entire veil of ignorance over the judiciary in regard to assessing a two-point increase. I would agree with that, Your Honor. I'm sure you would. As the Court's aware of. Can I ask a question, please? Do you have any authority for the proposition that we can just take our general knowledge or even our expertise into account in deciding these questions where there's not evidence in the record? Do you have any case that you could cite to us for that proposition? I don't have a direct case, Your Honor, beyond — You have an indirect case that you can cite for that proposition. I do not, Your Honor. So I thought the question was not whether we can draw that inference, but whether Judge Means, who's been trying criminal cases in Dallas for over 30 years and I'm sure has had cases like this, whether it's plausible in light of the record as a whole that he can make — he can draw that inference. I mean, the case law plainly says there doesn't have to be direct evidence, especially at sentencing, but that district judges draw an inference based on reason and experience. That's absolutely right, Your Honor. The inquiry for this Court is whether there is clear error in the district court's decision to apply the importation enhancement. And, of course, sentencing facts must be established only by a preponderance. On that reasoning, do you think NIMRFRO is wrong? It's an unpublished opinion of our Court. Are you saying that we should not follow it, or are you just saying that it's distinguishable because we have the name of the Mexican State in this case where they did not have it in NIMRFRO? Your Honor, the government has no quarrel with NIMRFRO, but the holding of NIMRFRO is, in fact, quite narrow, and we would say that it is distinguishable here. Because they used the word of the State's name. Is that the whole distinguishing factor? No, Your Honor, because the cartel itself is identified, whereas in NIMRFRO there was no reference to any specific cartel in Mexico or elsewhere, and because the location of the cartel's activities were also identified. We think those are the two critical facts that distinguish this case from NIMRFRO, and that the District Court did not clearly err in finding by a preponderance that some of the methamphetamine the defendant distributed came from Mexico. Once again, given that this would apparently have been very easy to put in the record, why didn't the government make sure that it gets in there knowing that there are I question the ability of getting the enhancement in. Why didn't the government be more vigilant in making sure that it, maybe that we shouldn't care if the probation officer has that, doesn't, may not have that duty, but why doesn't the government? Your Honor, I would agree with the Court that it would be best practice to specify. However, in the absence of a clear statement rule, I think the District Court was well within its discretion to find the, that the enhancement applied here. I see that my time has expired. For all these reasons, I'd ask the Court to affirm the judgment below. Okay. Thank you, Ms. Rickett. Mr. Koffer. Sorry. I might need some. Don't break it. I think I may have. I apologize. Hello. Through the briefs and argument, the parties have been playing tug of war. The government is trying to pull the double jeopardy issue back to the drafting of the Mr. Broun had no interest in a conviction based on that information. But the issue, and I agree, Mr. Broun does not have an interest in the information. He couldn't have insisted that the Court find him guilty of B1C. But at the time that Mr. Broun was judged guilty by Judge Means, then he had an interest in the finality of that guilty finding and going forward on that guilty finding. Now, the government has argued that Mr. Broun is not convicted at the time the Court finds him guilty. And so it begs the question, why would the Court, why do we have the procedure for the district court to adjudge someone guilty? Well, what do you do with this Mitchell case that Ms. Rickett cited that supposedly says that a criminal judgment isn't final until, you know, the formal judgment has been entered in the docket? Well, I agree with Mitchell in that the judgment is not final until the judgment and sentence is entered. And but that doesn't require that double jeopardy doesn't, or I'm sorry, that jeopardy doesn't attach until that point. We have all kinds of situations where a district court takes action before a verdict or before a judgment, and jeopardy has attached. Jeopardy generally attaches, for instance, in a bench trial when the first witness is sworn. Jeopardy attaches when we swear the jury. And so I don't think that is dispositive of the issue. Something that, and so what is the purpose of having the district court find Mr. Broon or anyone guilty in advance of sentencing? It just makes no sense that Mr. Broon or that a defendant is bound, is stuck, is in jeopardy, is going to be sentenced, but the district court and the government has the opportunity to change, correct, however you want to put it, and Mr. Broon is the one that is just, is stuck there. This is not a situation like Johnson where Mr. Broon has wielded a sword and held the district court or the government hostage, as it were. He didn't do anything to actively seek for jeopardy to attach to the lesser offense. But he is trying to use it as a sword since it's a windfall, which term was also used in the Ohio case. Well, a windfall doesn't dissolve double jeopardy. Actually, in most cases where a case where double jeopardy is an issue, the defendant does get a windfall, often an acquittal in many instances based on an error by the district court judge. And so that doesn't dissolve double jeopardy. But Mr. Broon didn't try to go and get this conviction so that he could fend away the greater charge. And no one is held hostage here. The government had the 14 days. They could have very easily, through due diligence, corrected this. When it comes down to it, it's not a typographical error. Once it makes its way into the report and recommendation and into the judgment of the district court, it's no longer a typographical error in information. But you do acknowledge you have no case that's directly on point here? With regard to? Your argument that the error, which you admit is an error, in entering a guilty plea based on the wrong statutory reference is, you know, invokes double jeopardy. That's right, Your Honor. I've not found a case that has facts similar to this. And so in any event, Mr. Broon was not seeking this situation. I understand he is going to get a windfall. There's no doubt about it. But double jeopardy, or jeopardy has to attach at some point. And there has to be some finality. There has to be clarity. That's the whole idea and policy behind double jeopardy. Now, with regard to the importation issue, I would just mention that I don't believe the PSR or the court has to state every detail. But in this case, it was objected to. And the district court had to consider the objection. The government responded. That's all of my time. For these reasons, I would ask that the court reform the judgment of conviction and remand the case. Thank you, Mr. Cofer. As a court-appointed lawyer, we greatly appreciate your services. And you've done a great job for your client. Thank you, Your Honor. Yes, sir.